UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARYL SCHLAPPI,<br><br>    Petitioner,<br><br>v.<br><br>JEANNE WOODFORD,<br><br>    Respondent. | No. CV-06-1034 CBM (HCx)<br><br>**ORDER DENYING PETITIONER'S WRIT FOR HABEAS CORPUS** |

The matter before the Court[1] is California prisoner Daryl Schlappi's (hereinafter, "Petitioner") Petition for Writ for Habeas Corpus (hereinafter, "Petition") challenging the Board of Prison Terms' (hereinafter, "the Board")[2] denial of parole at his July 6, 2004, suitability hearing. For the reasons discussed below, the Court **DENIES** the Petition and **DISMISSES it with prejudice.**

## BACKGROUND

This Petition arises out of Petitioner's 1991 conviction for attempted murder, for which he was sentenced to life plus two years.

---

[1] The Honorable Consuelo B. Marshall of the Central District of California sitting by designation. [Docket No. 24.]
[2] Since the July 6, 2004, Hearing, the Board of Prison Terms has changed its name to the Board of Parole Hearingps.

1

## I. Commitment Offense

On September 4, 1988, a person named William Odom owed Petitioner's co-defendant, Glen Sinaiko, sixty dollars ($60). That day, a man named Randy Gray drove Sinaiko and Petitioner to a soup kitchen in Oceanside where Sinaiko and Petitioner believed Odom was. Sinaiko and Petitioner went into the soup kitchen and lured Odom into the vehicle and Gray drove them to a wooded area near a deserted riverbed. Gray stayed in the vehicle while Petitioner, Sinaiko and Odom walked towards the riverbed.

Sinaiko and Odom walked ahead of Petitioner. Petitioner, carrying a loaded shotgun, caught up with the men. Sinaiko took the shotgun from Petitioner and shot Odom in the stomach. He then handed the shot gun to Petitioner and ran toward the car. Petitioner reloaded the shotgun and shot Odom in the head, hands and feet. Petitioner returned to the car and Gray drove them back to Oceanside.

Sometime later, the police arrived on the scene and found Sinaiko alive. Sinaiko was transferred to the hospital where he died. Medical staff determined Odom died from Sinaiko's gunshot to the stomach. Sinaiko confessed his participation in the crime and Petitioner was subsequently arrested.

The trial court declared a mistrial after the jury acquitted Petitioner of murder and was unable to reach a verdict on the lesser included offenses. An amended information filed charging Petitioner with: (1) attempted premeditated murder and deliberate murder, with special allegations that he had personally use a firearm and that he had inflicted great bodily harm in committing these offenses; and (2) assault with a firearm.

Petitioner was re-tried and found guilty of attempted premeditated murder pursuant to California Penal Code section 664/187(a) and assault with a deadly weapon pursuant to California Penal Code section 245(a)(2) with an enhancement for use of a firearm pursuant to California Penal Code section 12022.5.

## II.   Denial Of Parole And Petition For Habeas Corpus

At Petitioner's fourth parole suitability hearing on July 6, 2004, (hereinafter, "the Hearing") the Board found Petitioner unsuitable for early release. Petitioner then initiated a series of state-court challenges to the decision.

First, on April 6, 2004, Petitioner filed a writ for habeas corpus in San Diego Superior Court challenging the Board's denial on the same grounds he asserts here. The court denied the petition on February 18, 2005. Respondent's Answer at Ex. 4. Next, on March 17, 2005, Petitioner filed a writ for habeas corpus in the California Court of Appeals. The court denied the petition on April 15, 2005, because Petitioner's commitment offense, his previous record of violence and his unstable social history provided some evidence to support the Board's denial. *Id.* at Ex. 6. Then, on July 18, 2005, Petitioner filed a writ for habeas corpus with the California Supreme Court, which was summarily denied on April 19, 2006. *Id.* at Ex. 8. Petitioner now seeks habeas relief in this Court.

## PETITIONER'S GROUNDS FOR RELIEF

Petitioner argues he is entitled to habeas relief on the following grounds:

(1)   The Board's decision violated Petitioner's right to due process because it was unsupported by any evidence other than the facts of Petitioner's commitment offense; and

(2)   The Board created a new set of facts regarding Petitioner's commitment offense and regarded Petitioner as guilty of murder rather than the attempted murder.

## STANDARD OF REVIEW

An application for a writ for habeas corpus on behalf of a person in custody pursuant to a state court judgment shall not be granted with respect to any ground adjudicated on the merits in state court unless that adjudication either:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established law" refers to the "holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74, (2006).

A state court decision is "contrary to" the clearly established Supreme Court precedent if it: (1) "applies a rule that contradicts the governing law set forth in [Supreme Court] cases"; or, (2) "confronts a set of facts that are materially indistinguishable from a decision of the [Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002). State court decisions that are not contrary to clearly established Supreme Court precedent warrants federal habeas relief "only if they are not merely erroneous, but 'an *unreasonable* application' of clearly established federal law, or based on 'an *unreasonable* determination of the facts.'" *Id.* at 11; *see also Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam) (an unreasonable application of federal law is distinct from an incorrect application).

A state court decision is an "unreasonable application of" Supreme Court precedent if the court "correctly identifie[d] the governing legal rule but applie[d] it unreasonably to the facts" of the case. *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000)).

A reviewing federal court may look through subsequent unexplained orders to the last reasoned state court judgment, *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Here, that is the California Court of Appeals's decision.

## DISCUSSION

The gravamen of Petitioner's writ for habeas corpus is that the quantum of evidence relied on by the Board in denying him parole was constitutionally insufficient. As explained below, Petitioner is not entitled to habeas relief.

### I. The Board's Denial of Parole Was Not Arbitrary

First, Petitioner contends the Board's decision was arbitrary and violated

the due process clause of the Fourteenth Amendment of the United States Constitution. Petitioner is incorrect because the California Court of Appeals's decision that some evidence supported the Board's decision was a reasonable application of federal law.

### a. Legal Standard

Because a California prisoner possesses a liberty interest in the grant of parole, *see e.g., McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) ("California's parole scheme gives rise to a cognizable liberty interest in release on parole"), this court must evaluate "whether the procedures attendant upon th[e] deprivation" of that right "were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

### 1. *Some Evidence Standard*

In reviewing a writ for habeas corpus, the district court is not charged with determining, *post-hoc*, the petitioner's suitability for parole. Rather, the relevant inquiry is whether *some evidence* supports the Board's findings pursuant to California Penal code section 3041(b).

A denial of parole violates due process only if it is not supported by "some evidence in the record" or is "otherwise arbitrary." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 457 (1985). This standard is minimal:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455-56 (1985). A denial of parole does not violate due process if it has some indicia of reliability. *Rosas v. Nielsen*, 428 F.3d 1229, 1232 (9th Cir. 2005).

To assess whether a parole denial is based on "some evidence," a reviewing court must first look to the relevant state law to determine what findings are necessary to deem a prisoner unsuitable for parole. *Irons v. Carey*, 505 F.3d 846,

851 (9th Cir. 2007). Then, it must assess the findings in the petitioner's case and determine whether the state court's decision that those findings were supported by "some evidence" was an unreasonable application of that standard. *Id.*

### 2. *Factors Relevant to Determining An Inmate's Suitability For Early Release*

In California, the Legislature has statutorily created the mechanism for determining a prisoner's suitability for parole. Section 3041(b) states the Board:

> shall set a release date unless it determines that the gravity of the offense of the current convicted offense or offenses, or the timing and gravity of the current to past convicted offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual.

This standard requires the Board to consider pre and post-conviction factors to determine the threat an inmate poses to society. Additionally, in California, title 15, Section 2402, of the California Code of Regulations states that "all relevant, reliable information available to the panel shall be considered in determining" a lifetime prisoner who was convicted of attempted murder's suitability for parole. Cal. Code Regs., tit. 15, § 2402. Furthermore, "circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability." *Id.*

Section 2402 sets forth a non-exhaustive list of factors the board should consider to determine an inmate's suitability for parole. Factors that weigh against parole include, *inter alia*, that a prisoner: (1) carried out the offense in an especially heinous, atrocious, or cruel manner– e.g., the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering, involved an attack on multiple victims, involved abuse or mutilation of the victim, or the motive for the crime was inexplicable or trivial in relation to the offense; (2) has a prior record of violence; (3) has an unstable social history; (4) has a lengthy history of severe mental problems related to the offense; or (5) has engaged in serious misconduct in prison. Cal. Code Regs., tit. 15, § 2402(c).

Factors that weigh in favor of parole, on the other hand, include, *inter alia*, whether the prisoner: (1) has shown signs of remorse; (2) has no juvenile record; (3) has a stable social history; (4) is of an age that reduces the probability of recidivism; (5) committed the crime as a result of significant stress; (6) has made realistic plans for release or has developed marketable skills; or (7) has engaged in institutional activities that indicate an enhanced ability to function within the law upon release. Cal. Code Regs., tit. 15, § 2402(d).

The existence or nonexistence of any one factor is not dispositive. The key is how those factors interrelate and whether there is "some evidence" showing the prisoner is *currently* dangerous to the public. *See see also In re Lawrence*, 44 Cal. 4th 1181, 1212 (2008); *see also Hayward v. Marshall*, 512 F.3d 536, 543 (9th Cir. 2008) ("the findings that are necessary to deem a prisoner unsuitable for parole are not that a particular factor or factors indicating unsuitability exist but that a prisoner's release will unreasonably endanger public safety."). Accordingly, the inquiry is whether "some evidence indicates a parolee's release unreasonably endangers public safety." *Id.*

### b. Analysis

Petitioner contends the Board's denial of parole was arbitrary and unconstitutional because it was based on the immutable facts of his commitment offense and his pre-conviction criminal history. *See* Petitioner's Supplemental Brief at pp. 41-42. Petitioner is incorrect because the Board may base denials of parole on pre-conviction considerations such as the prisoner's commitment offense and his pre-conviction criminal record in some cases.

### 1. *Pre-Conviction Factors*

The accepted law in this Circuit is that the state's continued reliance on pre-conviction factors such as a prisoner's commitment offense or his criminal history conduct <u>may</u> violate due process <u>only</u> if pre-conviction factors are the <u>sole basis</u>

for denying the prisoner parole <u>and</u> the prisoner's behavior in custody is otherwise exemplary or substantially demonstrates rehabilitation. *See Marshall*, 512 F.3d at 545; *see also Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006); *Irons*, 505 F.3d at 854; *Biggs v. Terhune*, 334 F.3d 910, 917 (2003). The Ninth Circuit reasoned in *Biggs* that there comes a point when denial of parole must be based on something more than pre-conviction consideration; for an individual sentenced to life, that point may come after his fifteenth year in prison. F.3d at 915-917. Until that time, however, evidence that the commitment offense was heinous, atrocious or cruel, pursuant to California Code of Regulations, title 15, section 2402(c), may in of itself justify a denial of early release.

Here, the Board denied Petitioner parole because of his extensive pre-conviction criminal record and because of the particularly heinous nature of his commitment offense.[3] As a matter of law, the Board was entitled to "base [sic] its finding that [Petitioner] was unsuitable for parole on the gravity of his convicted offenses in combination with his prior offenses." *Sass*, 461 F.3d at 1129. Because Petitioner had served only thirteen years of his life sentence at the time of the Hearing, the Board's reliance on evidence of these pre-conviction factors did not constitute a deprivation of due process. *See Biggs*, F.3d at 915-917.

Moreover, both findings were supported by evidence. First, Petitioner's own testimony at the Hearing helped establish the callousness of his crime: When asked why he lured Odom to riverbed, Petitioner replied "Well he owed [Sinaiko] some money for drugs. So [we] went and got him and we brought him down to the river area" to "scare [him]. To try to get him to pay up the money." TR at pp.

---

[3] The Board found:
(1) "The offense was carried out in an especially cruel and callous manner . . . .This was a senseless crime. The offense was carried out in a manner that demonstrates a callous disregard for another human being. The motive for the crime was inextricable. Any time a crime involves [drug debts] whatever, it's senseless and it's trivial in relationship to the loss of a human life." The Record (hereinafter "TR") at p. 49.
(2) "The prisoner did have a somewhat escalating pattern of criminal conduct . . . There were also an escalating pattern of violent type of behavior, violence. He has not sufficiently profited from society's previous attempts to correct his criminality." *Id.* at 50.

14-15. Next, the Board reviewed Petitioner's pre-conviction criminal history which included the following: (1) as a juvenile, Petitioner beat up a man who owed him $1,000; (2) as an adult, Petitioner was convicted of misdemeanor possession of nun chucks; and (3) Petitioner was convicted for a fight while in county jail awaiting trial on his murder charges. *Id.* at pp. 19-21.

Evidence of these two factors, the callousness of Petitioner's crime and his pre-conviction criminal history, "amount to some evidence to support the Board's determination" and and "in making a judgment call based on evidence of pre-conviction recidivism and the nature of the conviction offense, the Board cannot be categorized as acting arbitrarily." *Sass*, 461 F.3d at 1129. Consequently, the Court of Appeals's decision upholding the denial was neither contrary to, nor an unreasonable application of clearly established federal law.

### 2. *Post-Conviction Factors*

Additionally, evidence of post-conviction factors supports the Board's denial of parole. *See* Cal. Code Regs., tit. 15, § 2402(d). The Board also found that evidence of Petitioner's unstable social situation and lack of family ties, his lack of concrete plans for the future, his "acceptable" but not excellent programming while incarcerated and the District Attorney's opposition[4] to his parole all weighed in favor of denying Petitioner early release. *See* Cal. Pen. Code § 2402 ("circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability."); *see Rosenkrantz v. Sup. Ct. of Cal.*, 29 Cal. 4th 616, 655 (2002) (board is required to consider all relevant evidence in determining whether the prisoner is a current

---

[4] Petitioner contends the Board's reliance on the District Attorney's opposition as dispositive, or highly influential, evidence affecting its decision violated Petitioner's due process rights. Petitioner's Supplemental Brief at pp. 36-37. Petitioner's arguments are supported by neither the record nor the law. As the Court of Appeals noted, Respondent's Answer at Ex. 6, there is no evidence in the record that Board the District Attorney's opposition was instrumental to its denial of Petitioner's parole; the Board did not make any findings with respect to the District Attorney's opposition letter. To the contrary, the record shows that Commissioner Welch merely noted for the record that the District Attorney's office opposed early release. TR at p. 51. Accordingly, the Court of Appeals's finding that Petitioner's argument is without merit is a reasonable application of federal law.

threat to public safety); TR at pp. 21-22, 32, 36-37.

Although the Board heard evidence that: (1) the prison psychologist considered Petitioner of below average dangerousness; (2) Petitioner had a commendable disciplinary history in prison; (2) Petitioner had learned a vocation in prison, *id.* at pp. 50-52, the Board concluded that "the positive aspects of his behavior do not outweigh he factors of unsuitability." *Id.* at p. 52. The Board commended Petitioner for his progress but found that he was, on balance, "unpredictable and thereby a threat to others." *Id.* The weighing of this post-conviction evidence establishes that the Board's decision was neither arbitrary nor unsupported by some evidence.

## II. The Board Did Not Create Its Own Version Of The Facts Relating To The Commitment Offense

Petitioner also argues the Board deprived him of due process by holding him culpable of murder rather than attempted murder and creating a new set of facts relating to the commitment offense. Petitioner's Supplemental Brief at p. 1. The Court of Appeals's finding that there is no evidence in the record for either of these claims was a reasonable determination of the facts.

First, the record does not support Petitioner's contention that the Board created its own set of facts pertaining to Petitioner's commitment offense and held him accountable for murder rather than attempted murder. The Hearing transcript shows that the Board knew that Petitioner was convicted of the inchoate crime of attempted murder rather than premeditated murder. TR at pp. 12-14. Petitioner confirmed, on the record, three times that his commitment offense was attempted murder. *Id.* Therefore, the Court of Appeals's finding that "the Board understood [Petitioner] was convicted of attempted murder" was reasonable. Respondents' Answer at Ex. 6.

Lastly, the record contains little evidence that the Board considered Petitioner a three strikes offender. At the outset of the Hearing Commissioner

Welch read into the record the offenses for which Petitioner was convicted: Commissioner Welch stated Petitioner "violated California Penal Code Section 667." This was incorrect: Petitioner was convicted of California Penal Code section 664, not section 667. Section 667 is California's "Three Strikes Law."

The California courts acknowledged that Commissioner Welch wrongly mentioned section 667, but nevertheless concluded from the context of that error and the remainder of the transcript that the error was harmless because the Board understood that Petitioner was not a three strikes offender. The record supports the conclusion that the reference to section "664" could have been inadvertent, or slight of tongue; there was no mention of the either "three strikes" law, Section 667, or Petitioner's potential status as a third strike offender during the remainder of the Hearing. Accordingly, the Court of Appeals's finding that the Board did not mischaracterize Petitioner as a three strikes offender was reasonable.

## CONCLUSION

For the foregoing reasons, this Court finds that the state courts' adjudication did not involve an unreasonable determination of the facts, and was not contrary to, or an unreasonable application of clearly established law, as determined by the United States Supreme Court. Habeas relief is not warranted and the Court **DENIES** the Petition and **DISMISSES it with prejudice**.

IT IS SO ORDERED.

DATED: October 14, 2009

By _____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE